In the Matter of CHARLES A. SMYTHWICK, an Attorney, Respondent.

First Department, July 2, 1920.

**Attorney at law disbarred — conversion of client's money — false testimony upon hearing.**

Attorney at law disbarred for converting to his own use the proceeds of a policy of life insurance, belonging to an estate, which he collected while acting as attorney for the administratrix, for making false and misleading statements to conceal the facts from the surety company which was on his client's bond, and for giving false testimony upon the hearing.

DISCIPLINARY proceedings instituted by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

*Samuel Frank Edmead*, for the respondent.

CLARKE, P. J.:

The respondent was admitted to the bar by the Appellate Division, First Department, in March, 1909, and was practicing in said department at the time he committed the acts complained of. The petition charges in substance, (a) that respondent converted to his own use the proceeds of a policy of life insurance belonging to the estate of Isaac Jefferson, deceased, which he collected while acting as attorney for Etta Barnett, the administratrix of the estate. (b) That he either refused to reply or made evasive answers to numerous

inquiries made of him in regard to the disposition of the proceeds of the insurance policy made to him and the progress made in the settlement of the case.

Isaac Jefferson died in April, 1915, leaving him surviving two infant sons. The respondent was retained to settle the estate by Etta Barnett, a colored woman in humble circumstances, an aunt of the Jefferson children. He procured her appointment as administratrix and also as general guardian of the children. He procured the usual administratrix's bond from the National Surety Company. The application for the bond provided that moneys belonging to the estate should be deposited in a bank subject to the joint control of the administratrix and the surety company. In the order of the Surrogate's Court dated May 25, 1915, appointing Etta Barnett guardian of the children, it was provided that the moneys belonging to the wards were to be collected and received by Etta Barnett and Daniel J. Carr and deposited in the North Side Savings Bank. Etta Barnett cannot read and her ability to write is limited to signing her own name. On June 5, 1915, the respondent collected the sum of $566.88, the proceeds of a policy of life insurance belonging to the estate of Isaac Jefferson, secured the indorsement of Etta Barnett to the check and deposited the money in his personal bank account in the Bronx Borough Bank. On June 4, 1915, the day before the respondent made said deposit, he handed Etta Barnett the sum of one hundred dollars. Twenty-five dollars of this amount she paid over to the respondent on account of his fees which had been previously fixed at the sum of fifty dollars. Sixty-five dollars of the sum retained by her was used to pay the undertaker's bill, and the remaining ten dollars was used to purchase clothes for the children.

On August 7, 1915, the respondent paid to Mrs. Scott, a cousin by marriage of Etta Barnett and with whom she and the two Jefferson children lived, the sum of sixty-seven dollars, which was due from Etta Barnett for the maintenance of the children.

Respondent's bank account shows that at the time he deposited said sum of $566.88 he had overdrawn his account $23.64, and that immediately thereafter he began to draw out the funds of the estate. On July 31, 1915, his balance had

been entirely exhausted and his account had again been overdrawn.

On June 28, 1915, the surety company wrote the respondent asking if any assets had been received and if so to arrange for the placing of the securities under the company's joint control arrangement. On August 16, 1915, the surety company wrote again asking for a reply to its letter of June twenty-eighth. On August eighteenth the respondent wrote to the surety company: "As soon as assets are collected in this estate I shall advise you and see that the same are deposited under your joint control." This was more than two months after the receipt by him of the money collected upon the life insurance policy and the deposit thereof to his own account. On October 20, 1915, the surety company again wrote asking as to the present status of the matter, to which the respondent replied: "The status of this matter is the same as when I wrote you a letter August 18, 1915." "I am making an effort now to gather in the assets of the estate." On December 15, 1915, the surety company wrote asking if anything new had transpired, to which the respondent replied: "Nothing new has transpired since I wrote you on October 27, 1915."

In addition to the foregoing inquiries of the surety company and the answers thereto, from January, 1916, repeated inquiries were made, first by a Boston attorney for Mrs. Barnett and subsequently by a firm of New York attorneys, by letter and by telephone, to June 30, 1916, asking for information as to the estate and where and how and in whose name the moneys were deposited. These letters were in many instances unanswered and when answered the replies were evasive — no information was given. It was not until after respondent had received notice from the Bar Association that charges had been filed against him and on the day fixed for the hearing before the committee on grievances that he gave to the representative of the National Surety Company a check for $273.88, which sum he then stated was the entire balance of the funds of the Jefferson estate remaining in his hands.

The learned official referee in his report finds that the allegations of the petition are established by the proof and that the respondent was guilty of misconduct as charged.

A careful examination of the very voluminous record and the elaborate explanation and defense sought to be established by the respondent clearly establishes the correctness of the conclusion of the learned referee. There is no doubt that immediately upon the collection of the moneys due under the life insurance policy he deposited the same in his own personal bank account and within a very short time had drawn it out and used it for his own purposes with the exception of $167, which he paid to Mrs. Barnett as heretofore stated, and that for a long period of time thereafter he concealed the fact of his collection and use of the money by evasive and false replies to repeated inquiries. Not only that, but believing that certain important witnesses were unavailable to the petitioner, by reason of absence from the State due to war and other conditions, upon the hearing he testified falsely to many facts, as was subsequently established when the missing witnesses were found and placed upon the stand. There is no doubt, on the record, that he manufactured and tendered in evidence letters and other writings to bolster up his case which were false and fictitious. We do not deem it necessary to further detail the evidence. The record satisfies us that he converted his client's money to his own use, made false and misleading statements to conceal the facts from the surety company, which was on his client's bond, and gave false testimony upon the hearing.

We approve of the conclusion of the learned official referee that he has been guilty of misconduct as an attorney, and find that his proved misconduct renders him utterly unfit to remain a member of an honorable profession. He is, therefore, disbarred.

DOWLING, SMITH and PAGE, JJ., concur.

Respondent disbarred. Settle order on notice.